IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

STEVEN HASTINGS                                                                                              PLAINTIFF
ADC #171672

v.          3:20-cv-00160-DPM-JJV (lead case)
            3:20-cv-00163-DPM-JJV (consolidated case)

ALEC J. WILBUR,
Corrections Sergeant, North Central Unit, *et al.*                                                  DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge D.P. Marshall Jr. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

### I.     INTRODUCTION

Steven R. Hastings ("Plaintiff") is a prisoner in the Arkansas Division of Correction who has filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983. In this consolidated proceeding, he alleges Defendants violated his constitutional rights in numerous ways while he was in the North Central Unit. *See* 3:20-cv-00160-DPM-JJV (Docs. 4, 7, 20, 92) and 3:20-cv-00163-DPM-JJV (Docs. 2, 6, 7, 11, 14).

Defendants Chief of Security Keith Day, Corporal Kyle J. Lebouef, Corporal Steven R. Puckett, and Sergeant Alec J. Wilbur have filed a Motion for Summary Judgment arguing they are

1

entitled to sovereign and qualified immunity. (Docs. 408-410.) And a large portion of their Brief is dedicated to events that happened on April 24, 2020. (*Id*.) But Defendant Wilbur and the claims arising on April 24, 2020 have already been dismissed from this lawsuit. (Doc. 304 at 11-13; Doc. 327; Doc. 351; Doc. 360.) This case has a long and complicated procedural history. To clarify, the <u>only</u> remaining claims[1] Plaintiff has properly exhausted are:

> (1) sometime before February 15, 2020, Defendant Lebouef served him a diabetic meal tray in retaliation for Plaintiff filing grievances (grievance NC-20-135 at Doc. 284-5);
>
> (2) on March 18, 2020, Defendant Day served him a diabetic meal tray to punish him for being in restrictive housing (grievance NC-20-209 at Doc. 284-10); and
>
> (3) on April 18, 2020, Defendant Puckett denied him medical care and issued false disciplinary charges in retaliation for Plaintiff filing a grievance against him (grievance NC-20-348 at Doc. 284-15).

(*Id.*) Plaintiff has filed several Affidavits that I will liberally construe as a response. (Doc. 414; Doc. 416; Doc. 418; Docs. 419-24.) Thus, the Motion is ready for disposition. After careful consideration and for the following reasons, I recommend the Motion for Summary Judgment be GRANTED, Plaintiff's claims against Defendants Day, Lebouef, and Puckett be DISMISSED with prejudice, and this case be CLOSED.[2]

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the

---

[1] Plaintiff also has claims pending against Defendants Richard and Hearyman. On June 6, 2022, I entered a Partial Recommended Disposition suggesting they be dismissed with prejudice. (Doc. 426.)

[2] To the extent my recommendations go beyond the arguments raised by Defendants, this document is providing the parties with notice and fourteen days to respond. *See* Fed. R. Civ. P. 56(f) (a court may grant a motion for summary judgment "on grounds not raised by a party" after "giving notice and a reasonable time to respond").

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. FACTS

During the relevant time in this lawsuit, Plaintiff was clinically obese and had type two diabetes. (Doc. 408-1 at 1-46; Doc. 413-1 at 13-38; Doc. 413-3.) Prison medical providers were treating those conditions with daily blood sugar checks, insulin injections, and a diabetic diet of 2000 to 2200 calories a day. (*Id.*) And Plaintiff was living in the restrictive housing unit due to disciplinary matters. (Doc. 408-2; Doc. 408-3.)

On February 15, 2020, Defendant Lebouef served Plaintiff his prescribed diabetic meal tray. (Doc. 284-5; Doc. 284-10; Doc. 408-1 at 54-59; Doc. 408-3; Doc. 408-5.) As the Chief of Security, Defendant Day did not hand out meal trays. (*Id.*) Instead, Plaintiff says that on or

3

about March 18, 2020, Defendant Day told his subordinates that all prisoners in restrictive housing must receive their medically prescribed meals and could not choose regular meals, as Plaintiff claims he was allowed to do while in general population. (*Id.*) Plaintiff did not like the diabetic meal trays because they lacked seasoning and dessert. (Doc. 408-1 at 31-36.)

On April 16 or 17, 2020, former defendant Wilbur did not let a nurse test Plaintiff's blood sugar or give him insulin. (Doc. 4; Doc. 284-15, Doc. 408-1 at 47-50.) Plaintiff wanted to file an emergency grievance against Wilbur. (*Id.*) But Defendant Puckett refused to sign it. (*Id.*) On April 18, 2020, a nurse was checking Plaintiff's blood sugar under Defendant Puckett's supervision. (*Id.*) Plaintiff says he told Defendant Puckett he was going to file a grievance against him for refusing to sign his emergency grievance. (*Id.*) According to Plaintiff, Defendant Puckett became angry, took the blood testing device out of his hand, and would not let the nurse give him insulin. (Doc. 408-1 at 47-50.) In contrast, Defendant Puckett says he stopped the medical care because Plaintiff was aggressive, insolent, and disobedient. (Doc. 408-3.) Later that day, Defendant Puckett wrote a major disciplinary accusing Plaintiff of being insolent and disobeying orders. (*Id.*) And a disciplinary hearing officer found him guilty of those charges. (Doc. 408-1 at 47-50; Doc. 408-3). As a result, Plaintiff lost privileges for forty-five days, spent fifteen days in punitive isolation, and remained class IV, which made him ineligible to earn good time credits. (Doc. 408-1 at 53.) Importantly, Plaintiff said during his deposition he received insulin within twenty four hours of the April 18, 2020 incident and that he was not harmed, in any way, by the delay. (*Id*. at 49. )

IV. DISCUSSION

    A.    **Sovereign Immunity**

Defendants Puckett, Lebouef, and Day argue they are entitled to sovereign immunity. I

agree. The doctrine of sovereign immunity, which is derived from the Eleventh Amendment, precludes the recovery of monetary damages from state officials acting in their official capacities, unless the state has waived its immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989*)*; *Kruger v. Nebraska*, 820 F.3d 295, 301(8th Cir. 2016). Defendants are state officials. And, the State of Arkansas has not waived its Eleventh Amendment immunity. *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991). Thus, they are entitled to sovereign immunity from Plaintiff's request for monetary damages against them in their official capacities. But sovereign immunity does not apply to Plaintiff's requests for injunctive relief or money damages from Defendants in their personal capacities. *Larson v. Kempker,* 414 F.3d 936, 939-40 (8th Cir. 2005); *Murphy v. Arkansas,* 127 F.3d 750, 754 (8th Cir. 1997).

**B.    Qualified Immunity**

Defendants Puckett, Lebouef, and Day also say they are entitled to qualified immunity. Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to this case is a question of law, not fact, for the court to decide. *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019).

Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a violation of a constitutional right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767,

770 (8th Cir. 2021). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson* 555 U.S. at 236; *Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019). I find Defendants are entitled to qualified immunity based on the first prong.

### 1. Defendant Lebouef

Plaintiff says Defendant Lebouef served him a diabetic meal tray to retaliate against him for filing grievances. (Doc. 4; Doc. 284-5.) To defeat qualified immunity on this retaliation claim, Plaintiff must have evidence: (1) he engaged in a constitutionally protected activity; (2) Defendant Lebouef took adverse action that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *See De Rossitte v. Correct Care Sols., LLC.,* 22 F.4th 796, 804 (8th Cir. 2022); *Waters v. Madson,* 921 F.3d 725, 741 (8th Cir. 2019).

There is no question Plaintiff engaged in constitutionally protected activity when he filed grievances against Defendant Lebouef.[3] *Gonzalez v. Bendt*, 971 F.3d 742, 744-455 (8th Cir. 2020); *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). It is doubtful a 2000 to 2200 calorie diet without seasoning or dessert is sufficiently adverse action that would "chill a prisoner of ordinary firmness" from engaging in constitutional protected actively. *See Garcia v. City of Trenton,* 348 F.3d 726, 728 (8th Cir. 2003) (the ordinary firmness test "is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment"); *Naucke* v. *City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2008) ("it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that

---

[3] The parties have not clarified when Plaintiff filed these grievances.

exercise"). But even if I presume Plaintiff clears that hurdle, there is no evidence satisfying the third element. Specifically, the parties agree a prison doctor ordered a specific diet to treat Plaintiff's diabetes. (Doc. 408-1; Doc. 413-1 at 13-18; Doc. 413-3). Defendant Lebouef explains in his sworn declaration the kitchen staff prepared Plaintiff's meal tray as ordered by the medical providers, and he did not have any medical training or the authority to change Plaintiff's diet. (Doc. 408-3.) Instead, Defendant Lebouef says his only role was to deliver the meals as they were provided to him. (*Id*.) Plaintiff has not offered <u>any</u> evidence to refute that testimony or otherwise establish Defendant Lebouef acted with a retaliatory animus when he delivered his medically prescribed diet. To avoid summary judgment, a prisoner must present "affirmative evidence of a retaliatory motive." *Lewis*, 486 F.3d at 1029. Plaintiff has not done so. And his "mere allegations of a retaliatory motive are insufficient" to defeat summary judgment. *See De Rossitte*, 22 F.4th at 804. Because the evidence viewed in the light most favorable to Plaintiff does not suggest retaliation, I conclude Defendant Lebouef is entitled to qualified immunity.

### 2. Defendant Day

Plaintiff says Defendant Day served him a diabetic meal tray to "punish" him for being in restrictive housing instead of allowing him to choose a regular tray, as he was allegedly allowed to do while in general population. (Doc. 4; Doc. 284-10; Doc. 408-1 at 54-59.) Plaintiff does not have sufficient evidence here to satisfy any of the elements of a retaliation claim.

As to the first element, Plaintiff did not have a constitutionally protected right to remain in general population.[4] *Smith v. McKinney*, 954 F.3d 1075, 1082 (8th Cir. 2020); *see also Johnson*

---

[4] Plaintiff is <u>not</u> alleging he was transferred to restrictive housing in retaliation for exercising a constitutional right, which would be an actionable claim. *See Saylor v. Nebraska,* 812 F.3d 637, 646 (8th Cir. 2016). Instead, he is alleging he was retaliated against for being in restrictive housing.

*v. Jones,* Case No. 04-2105, 2005 WL 1220371,*1 (8th Cir. 2005) (affirming summary judgment when a prisoner said he was retaliated against for ending an affair and not for exercising a constitutional right). As previously discussed, the meals he received are probably not sufficient adverse action to sustain the second element of a retaliation claim. Finally, Plaintiff does not have sufficient evidence of a retaliatory intent to satisfy the third element. Specifically, the parties agree Defendant Day instructed officers in restrictive housing to deliver meals as prescribed <u>by medical personnel</u>. (Doc. 408-1 at 55-57; Doc. 408-4.) Plaintiff has not offered any evidence suggesting Defendant Day issued those instructions for retaliatory reasons or had the authority to override the doctor's instructions. Accordingly, I conclude he is entitled to qualified immunity. *See Lewis*, 486 F.3d at 1029; *De Rossitte*, 22 F.4th at 804

### 3. Defendant Puckett

Plaintiff says on April 19, 2020, Defendant Puckett denied him medical care and filed retaliatory disciplinary charges against him. I will discuss each claim separately.

"The Eighth Amendment requires state prison officials to provide inmates with needed medical care." *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016). To proceed with his inadequate medical care claim, Plaintiff must have evidence he had an objectively serious need for medical care on April 19, 2020, Defendant Puckett subjectively knew of but deliberately disregarded that serious medical need, and he was harmed by the lack of medical care. *See Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 885 (8th Cir. 2009); *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Plaintiff <u>admits</u> he was not harmed, in any way, by failing to receive his insulin or have his blood sugar checked. (Doc. 408-1 at 49-50.) Thus, his inadequate medical care claim

against Defendant Puckett fails as a matter of law.[5] *Gibson,* 433 F.3d at 646 (affirming summary judgment when a prisoner did not have evidence he was harmed by the provided medical care); *Redmond v. Kosinski,* 999 F.3d 1116 (8th Cir. 2021) (to avoid summary judgment, a prisoner must "place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment").

As to Plaintiff's second claim, it is well settled prison officials cannot use disciplinary proceedings to retaliate against inmates for exercising their constitutional rights such as filing a grievance. *Sanders v. Hobbs*, 773 F.3d 186, 190 (8th Cir. 2014); *Hartsfield v. Nicholas*, 511 F.3d 826, 829 (8th Cir. 2009). However, a retaliatory discipline claim fails if there is "some evidence the inmate actually committed a rule violation." *Sanders*, 773 F.3d at 190-91; *Hartsfield*, 511 F.3d at 829. Importantly, the Eighth Circuit has clarified a "report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as some evidence upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker." *Id.* And, this rule applies even if the report is written by the officer who is alleged to have engaged in the retaliatory conduct. *Id.* In other words, a disciplinary decision made by an impartial decision maker and supported by some evidence "essentially checkmates" a retaliation claim. *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994).

The parties agree a disciplinary hearing officer found Plaintiff guilty of being insolvent and disobedient on April 19, 2020 when the nurse was trying to check his blood sugar and give him

---

[5] Defendant argues he is entitled to dismissal based on the physical injury rule. 42 U.S.C. § 1997e(e). However, the physical injury rule is a limit on compensatory damages; it is not a bar to all forms of recovery. *Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004). A prisoner who suffers no physical injury can still recover nominal damages, punitive damages, injunctive relief, and a declaratory judgment. *Id.* In other words, the physical injury rule limits the types of damages a successful plaintiff may recover.

insulin.[6]  And Plaintiff has not pointed to any affirmative evidence suggesting Defendant Puckett acted with a retaliatory animus when he terminated that encounter due to his misbehavior.  *See also Meuir v. Greene Cty. Jail Emps.,* 487 F.3d 1115, 1119 (8th Cir. 2007) (a prisoner has a "heavy evidentiary burden" to establish retaliation, and "[m]erely alleging that an act was retaliatory is insufficient").  Accordingly, I conclude Defendant Puckett is entitled to qualified immunity from this claim.

I write further to clarify one issue raised by Defendants that the State has also recently raised in other § 1983 proceedings.  Citing *Heck v. Humphrey*, 512 U.S. 477 (1994), Defendants argue a federal court cannot invalidate a prison disciplinary proceeding.  (Doc. 409 at 11-12.)  The *Heck* holding is confusing and narrowly applied.  *Heck* and its progeny say a prison disciplinary conviction that resulted in the loss of <u>good time credits</u> must first be invalidated in state court or in a federal habeas petition.  *Id.; Edwards v. Balisok*, 520 U.S. 641 (1997).  If successful in either arena, the prisoner may then proceed with a § 1983 claim for nominal and punitive damages resulting from the invalidated disciplinary conviction.  Importantly, *Heck* only applies when good time credits were taken.  *See Anderson v. Kelley*, No. 21-2669, 2021 WL 4205310, *14 (8th Cir. 2021); *see also Muhammad v. Close,* 540 U.S. 749, 751 (2004).  Plaintiff did <u>not</u> lose any <u>earned</u> good time credits as a result of his April 19, 2020 disciplinary convictions.  Instead, he remained at the lowest classification level which made it impossible for him to earn good time credits in the future.  Prisoners do not have a constitutional right to maintain their classification level even if it eliminates or reduces their ability to earn future good time credits because the potential effect on the length of their sentence is too speculative.  *Franklin v. Hobbs*,

---

[6] Plaintiff does not say the disciplinary hearing officer had a motive to retaliate against him.

Case No. 5:10-CV-00066, 2011 WL 2160592, *6 (E.D. Ark. May 5, 2011); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Persechini v. Callaway*, 651 F.3d 802, 807 n, 4 (8th Cir. 2011); *Freitas v. Ault,* 109 F.3d 1335, 1338 (8th Cir. 1997); *Carney v. Houston,* 33 F.3d 893, 894 (8th Cir. 1994); *Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990). Thus, the *Heck* holding does not apply to this case.

### C. Prospective Injunctive Relief

Finally, sovereign and qualified immunity do not apply to Plaintiff's remaining request for injunctive relief. *See Hamner v. Burls*, 937 F.3d 1171, 1176 (8th Cir. 2019); *Larson v. Kempker,* 414 F.3d 936, 939-40 (8th Cir. 2005). For the reasons previously explained, I conclude that, viewing the evidence in the light most favorable to Plaintiff, no reasonable juror could rule in his favor on the constitutional claims he has raised against Defendants Lebouef, Day, and Puckett. Thus, I also recommend his request for injunctive relief be dismissed with prejudice.

### V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 408) be GRANTED; Plaintiff's claims against Defendants Day, Lebouef, and Puckett be DISMISSED with prejudice; and this case be CLOSED.

2. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

DATED this 13th day of June 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE